UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| APARTMENT INSIDERS, LLC, <br><br> Plaintiff, Counter-Defendant, <br><br> v. <br><br> MIRAKLE HENSEN, <br><br> Defendants, Counter-Plaintiff. | Case No. 3:25-cv-01137 <br><br> Judge Eli J. Richardson <br> Magistrate Judge Luke A. Evans |

To:     The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 636(b)(1)(A) & (B), this matter was referred for decision on nondispositive matters, and for a Report and Recommendation on dispositive matters (Doc. Nos. 7 and 60). The undersigned now reviews the following three motions filed by *pro se* Defendant and Counter-Plaintiff, Mirakle Hensen (hereinafter, "Defendant"), including (i) the Motion For Leave To Manually File Audio Exhibits" (Doc. No. 30, "Motion to File Audio Exhibits"), (ii) the "Motion For Sanctions" (Doc. No. 31, "Motion for Sanctions"), and (iii) the "Motion For Leave To Manually File Audio Recordings" (Doc. No. 51, "Second Motion to File Audio Exhibits").[1]

For the following reasons, it is recommended that the Motion for Sanctions be denied, the Motion to File Audio Exhibits be denied as moot, and the Second Motion to File Audio Exhibits be denied as moot.

---

[1]     Defendant's pending motions, including her (i) Motion to File Under Seal (Doc. No. 29), (ii) Motion for Protective Order (Doc. No 35), (iii) Motion to Quash (Doc. No. 37), (iv-v) Second Motion for Protective Order and Motion to Expedite (Doc. No. 38), and (vi) Motion to Withdraw (Doc. No. 41), are addressed in an order issued separately.

## I. Background

### A. The Instant Matter

Plaintiff and Counter-Defendant, Apartment Insiders, LLC (hereinafter, "Plaintiff"),[2] filed the instant matter on October 2, 2025 (Doc. No. 1). Defendant was a real estate agent in Plaintiff's Charlotte, North Carolina office, until her termination on July 30, 2025 (*Id*. at 1 and 4). The complaint sets forth claims for trade secret misappropriation and breach of contract (*Id*. at 5-6).

Prior to Defendant's termination, Plaintiff claims that Defendant accessed "business-related information" online via a cloud drive and downloaded "at least two compilations that identify [Plaintiff's] landlords in the Charlotte area and the referral fees they pay" (Doc. No. 15 at 7-8). Plaintiff also claims that Defendant emailed herself the "last three months of [her] production reports", which effectively list the tenants that [Defendant] placed, where she placed them, and the start and end dates of their leases (*Id*.). After her termination, Plaintiff contends that Defendant joined a "direct competitor"—Carolina Apartment Locating ("CAL")[3]—and is now, on behalf of CAL,[4] actively "pursuing [] [Plaintiff's] tenants and landlords in violation of the[ir] Business Protection Agreement" (*Id*.). Plaintiff also notes that (i) no tenants in Defendant's pipeline have since sought Plaintiff's services and (ii) Defendant blocked Plaintiff's personnel from viewing a TikTok account regularly used for marketing purposes (*Id*. at 8).

### B. The Pending Motions

All three motions relate to (i) Plaintiff's litigation approach and discovery methods, specifically the third-party subpoenas on CAL and Defendant's current brokerage—the Apartment

---

[2]    Plaintiff is a Nashville-based apartment locating company that also operates in Charlotte, North Carolina (Doc. No. 15 at 1).

[3]    CAL discontinued its relationship with Plaintiff on or about September 17, 2025 (Doc. No. 12-1 at p. 34).

[4]    CAL is not a named defendant in the instant matter, and Plaintiff has not directly accused CAL of misconduct (Doc. Nos. 1 and 56 at p. 6).

Brothers, LLC (Doc. Nos. 31 at p. 1, 47 at p. 1, and 49 at p. 5), and (ii) Plaintiff's termination of third-party witness, Renee Rossignol (46 at p. 1-2, 49 at p. 3, and 51 at p. 2).

### 1. Plaintiff's Litigation Approach and Discovery Methods

With respect to litigation approach and discovery methods, Defendant takes issue with (a) Plaintiff's commencement of the instant matter on unsupported allegations, misrepresentations of Defendant's performance, and defamatory internal communications to staff, (b) opposing counsels' "aggressive" tone and "intimidating" behavior in out-of-court verbal communications,[5] forum shopping,[6] and previously withdrawn motion for expedited discovery, (c) any direct contact or general involvement with her employers via third-party subpoenas (Doc. Nos. 25, 31 at p. 2-3, Doc. No. 32 at p. 2, 47 at p. 1, and 49 at p. 5-6).

More specifically, Defendant alleges Rule 11 grounds are implicated due to Plaintiff's internal communications with staff about the prior, state court ruling and current litigation (Doc No. 31 at p. 2-3). Further, Defendant claims that the commencement of the litigation outright and subsequent litigation tactics, including the retaliatory termination of Ms. Rossignol, placed "tremendous pressure" on Defendant (*Id*. at p. 2; Doc. No. 49 at p. 1). Next, Defendant contends § 1927 is appropriate due to the commencement of this action in federal court after the state court litigation, request and subsequent withdrawal of its motion for expedited discovery, communications with her employer, and attempts to prematurely force a Rule 26(f) conference (Doc No. 31 at p. 3). Finally, Defendant claims inherent authority is applicable for any retaliatory

---

[5]     Defendant claims that Plaintiff make statements such as "I fight for a living and I don't lose" and that he "would rather not have to put on a suit." (Doc. No. 47 at p.1).
[6]     Allegations of forum shopping have been previously addressed in the October 24, 2025, Order related to Plaintiff's Motion for Temporary Restraining Order (Doc. No. 13).

3

termination of Defendant, withholding of her earned commissions thereafter, and Plaintiff's later defamatory communications or other involvement with staff and employers (*Id*. at p. 3-4).

For context, specifically with respect to case management, the 26(f) conference was held on November 17, 2025 (Doc. Nos. 43 at p. 1 and 45-1 at p. 1), the initial case management conference was held on December 10, 2025 (Doc. No. 6), and the initial case management order was filed on December 12, 2025 (Doc. No. 52).[7] Plaintiff issued the above-mentioned subpoenas on November 29, 2025 (Doc. No. 55 at p. 2).

As for the subpoenas at issue, Defendant maintains that they were premature because the Rule 26(f) conference had not occurred, discovery had not opened, and the Court had not approved the Joint Case Management Order (Doc. Nos. 36 at p. 1, 43, and 52). In response, Plaintiff notes that the subpoenas were issued after the 26(f) conference and before the initial case management conference, and subsequently questions whether Defendant confused the conferences (Doc. No. 55 at p. 9). Defendant also claims that she "had no official notice prior outside of vague assertions of [the] subpoena" (Doc. No. 38 at p. 6). However, Plaintiff states that Defendant was provided copies of the subpoenas on November 25, 2025 (Doc. Nos. 45-1 at p. 1 and 55 at p. 2).

### 2. Plaintiff's Termination of Third-Party Witness

Like Defendant, Ms. Rossignol was a real estate agent of Plaintiff until her termination on or about November 30, 2025 (Doc. No. 38 at p. 1). Defendant filed a declaration from Ms. Rossignol on December 4, 2025 (Doc. No. 41-2). In support of her Motion for Sanctions, Defendant alleges that Ms. Rossignol's termination was retaliation for her participation in the

---

[7]     Pursuant to the initial case management order, the parties must serve all written discovery no later than May 11, 2026, and complete all written discovery and deposition of fact witnesses by September 10, 2026 (Doc. No. 52). Additionally, all motions related to fact discovery must be filed no later than September 1, 2026 (*Id*.).

instant matter (Doc. Nos. 38 at p. 2 and 49 at p. 3). In opposition, Plaintiff maintains that Ms. Rossignol was terminated for "forwarding internal, confidential, and privileged information to [a] personal email address and shar[ing] it externally" (Doc. No. 56 at p. 2).

## II.     Legal Standard

Magistrate judges generally have authority to enter orders regarding non-dispositive pretrial motions but must submit report and recommendations for dispositive motions. 28 U.S.C. § 636; Fed. R. Civ. P. 72. Further, pretrial motions for sanctions are generally nondispositive matters that a magistrate judge may decide by order. *Evans v. Walgreen Co.*, No. 09-CV-02491-Ma/P., 2011 WL 4436135, at *1 n.1 (W.D. Tenn. Aug. 16, 2011) (collection of cases). The Sixth Circuit has held, however, that "magistrate judges lack jurisdiction to enter Rule 11 orders." *Bennett v. Gen. Caster Serv. of N. Gordon*, 976 F.2d 995, 998 and n.7 (6th Cir. 1992).

### A.     Federal Rule of Civil Procedure 11

#### 1.     Rule 11

Rule 11 is intentionally limited to pleading and motion abuse. *See* Fed. R. Civ. P. 11(b). "[T]he rule's express reference to 'pleadings, written motions, and other papers' covers a wide range of documents that are commonly *filed* in a civil action in a United States district court." *See also* 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. and Pro. § 1333 (4th ed. supp. Apr. 2023) (emphasis added).

Rule 11 provides, in relevant part, that by presenting a pleading, written motion, or other paper to the court an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) [the pleading, written motion, or other paper] is *not being presented for any improper purpose*, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

5

(2) the claims, defenses, and other legal contentions are *warranted by existing law* or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions *have evidentiary support* or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery ....

Fed. R. Civ. P. 11(b)(1)–(3) (emphasis added).

The court may impose an appropriate sanction on any attorney or unrepresented party that violated the rule or is responsible for a violation. Fed. R. Civ. P. 11(c)(1). The use of "may" indicates that "sanctions are discretionary." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir. 2009) (citation omitted). "[A]ny sanctions imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Id*.

"[T]he central purpose of Rule 11 is to deter baseless filings in District Court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 390 (1990). In the Sixth Circuit, "the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990)). For a party's conduct to be considered so "unreasonable" as to warrant sanctions, that conduct must be "relatively egregious." *Fulmer v. MPW Indus. Serv., Inc.*, No. 3:04-0879, 2006 WL 1722433, at *5 (M.D. Tenn June 21, 2006). Nonetheless, "[g]ood faith is not a defense." *Jackson v. Law Firm of O'Hara*, 875 F.2d 1224, 1229 (6th Cir. 1989). Indeed, Rule 11 imposes "an implied 'duty of candor,' which attorneys violate whenever they misrepresent the evidence supporting their claims" or fail to conduct "an inquiry reasonable under the circumstances." *King v. Whitmer*, 71 F.4th 511, 521, 523 (6th Cir. 2023) (citation omitted). However, the mere fact that a claim ultimately lacks legal merit does not warrant sanctions.

6

*CapStarBank v. Perry*, No. 3:17-cv-01221, 2018 WL 3389712, at *4 (M.D. Tenn. July 12, 2018) (citing *Fulmer*, 2006 WL 1722433, at *3).

### 2. Safe Harbor Threshold

To impart the seriousness of a Rule 11 motion and its consequences on all parties, a fundamental procedural component of Rule 11 is the "safe harbor provision." *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments:

> The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2).

The Sixth Circuit unequivocally interprets the safe harbor provision as an "absolute requirement" on the Court's application of Rule 11. *Ridder*, 109 F.3d at 296 ("[T]he rule is unquestionably explicit . . . that unless a movant has complied with the twenty-one day 'safe harbor' service, the motion for sanctions 'shall not be filed with or presented to the court.'") (internal citations omitted); *see First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501 (6th Cir. 2002); *see also Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767 (6th Cir. 2014). The plain language of the Rule supports this interpretation. *Jordan v. Joe B. Beasley & Assoc. L.P.*, No. 3:23-cv-00496, 2025 WL 2649538, at *2 (M.D. Tenn June 24, 2025).

### B. 28 U.S.C. § 1927

Section § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

7

28 U.S.C. § 1927.

Like Rule 11, the primary purpose of § 1927 is to protect the integrity of the litigation process. *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986) ("An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to carte blanche to pursu[e] claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise."); *see also King*, 71 F.4th at 530 (quoting *Waeschle v. Dragovic*, 687 F.3d 292, 296 (6th Cir. 2012)).

While there is not a bright line rule as to what constitutes an unreasonable and vexatious multiplying of proceedings, this is satisfied when an attorney "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *In re Ruban*, 825 F.2d at 984. Falling short of these obligations requires conduct beyond a "simple inadvertence or negligence" and thus, simply failing to make a reasonable inquiry does not always equate to unreasonably multiplied proceedings. *Id*.; *see Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 532 (6th Cir. 2006) ("Section 1927 imposes an objective standard of conduct on attorneys, and courts need not make a finding of subjective bad faith before assessing monetary sanctions under § 1927") (citing *Jones*, 789 F.2d at 1230). Sanctions imposed under § 1927 are limited to the attorney and cannot extend to either the party or a law firm. *Stalley v. Mt. States Health All.*, No. 2:06-CV-216, 2010 WL 446929 at *2 (E.D. Tenn. Feb. 2, 2010).

### C.     Inherent Authority

In addition to Rule 11 and § 1927, Federal courts possess the inherent authority to sanction a party who acts in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). Unlike Rule 11 and § 1927, however, such inherent power is "a limited source" implied "from the need to make the court function." *Id*. at 42 (citation

omitted). Further, when there is bad faith conduct in the course of litigation that could be adequately sanctioned under alternate sanction mechanisms, the court ordinarily should rely on such mechanisms rather than inherent power. *Id*. at 50.

Moreover, such power is governed "by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962). While such power "must be exercised with restraint and discretion," "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45.

### D. Attorneys' Fees

Although the Court has broad discretion to impose sanctions under Rule 11 and § 1927, a monetary sanction under either provision is an extraordinary remedy that should be used sparingly. *See Fharmacy Records v. Nassar*, 572 F. Supp. 2d 869, 879 (E.D. Mich. 2008) (citation omitted); *see also* Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendments) (noting that "the purpose of Rule 11 sanctions is to deter rather than to compensate").

Attorneys' fees are available under either Rule 11 or § 1927. *See* Fed. R. Civ. P. 11(c)(4) ("The sanction may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees . . . directly resulting from the violation."); *see also* 28 U.S.C. § 1927 (noting that sanctions may include satisfaction of "attorneys' fees reasonably incurred because of the sanctionable conduct).

The party seeking attorneys' fees has two main obligations: (1) to provide the court with "evidence supporting the hours worked and rates claimed" and (2) to demonstrate the requested fee award is "reasonable." *Lance Coal Corp. v. Caudill*, 655 F. App'x 261, 262 (6th Cir. 2016).

9

## III.     Analysis

Prior to reaching the various procedural defects and unavailing merits of Defendant's pending motions, it is incumbent on this Court to preface the following analysis for Defendant's benefit. This is particularly apt because Defendant appears to repeatedly characterize procedural guardrails as a penalty or insurmountable blocking mechanism for *pro se* litigants generally (*See, e.g.*, Doc. No. 64 at p. 3 and 6).

Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *see, e.g., Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants are not entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g., Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Indeed, such lenient treatment generally accorded to *pro se* litigants has limits. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991). Where a *pro se* litigant fails to comply with an easily understood deadline, there is no basis at all for treating that party more generously than a represented litigant. *Id*.

Although the Court is sympathetic to the difficulties of navigating the Federal Rules of Civil Procedure without a legal background, it is imperative that Defendant understands civil procedure as a means for orderly and expeditious disposition of cases. More importantly, Defendant must understand such procedural rules exist to ensure fairness, not to shield bad actors or otherwise prevent review on the merits before the Court.

While acknowledging Defendant's choice to proceed *pro se* in this matter, Defendant is nonetheless advised to review the Federal Rules of Civil Procedure, as well as this Court's Local Rules, to avoid insufficient or otherwise procedurally defective filings in the future.

### A.     Motion for Sanctions

On November 24, 2025, Defendant filed a Motion for Sanctions (Doc. No. 31). In connection with the Motion for Sanctions, Defendant also filed a "Supplement" on November 24,

2025 (Doc. No. 32), wherein Defendant "introduces no new claims" and characterizes the adversarial nature of litigation as particularly intimidating for *pro se* litigants (Id. at p. 1-2). On December 8, 2025, Plaintiff filed a response (Doc. No. 45) in opposition to the Motion for Sanctions. On December 9, 2025, Defendant filed her reply (Doc. No. 47).

Also, on December 9, 2025, Defendant filed an "Addendum" to the Motion for Sanctions (Doc. No. 49), wherein Defendant addresses her claim of retaliation against Ms. Rossignol with additional allegations of "pressure or intimidat[ion]" (*Id*. at p. 1, 3). All additional allegations are limited to an accusation letter and proposed settlement agreement between Plaintiff and Ms. Rossignol, each of which occurred after her termination (*Id*. at p. 3). On December 23, 2025, Plaintiff filed a response (Doc. No. 61), in opposition to the Addendum. On December 30, 2025, Defendant filed her reply (Doc. No. 63).

While Rule 37 is likely what Defendant intended, "it is both inappropriate and impractical for this Court to render [legal] advice to a party." Fed. R. Civ. P. 37 (governing discovery conduct and related sanctions); *Smith v. Palmer*, No. 11–CV–12765, 2011 WL 2623301, at *1 (July 5, 2011) (collection of cases); *see also Burke v. Morgan*, No. 06–CV–348–JMH, 2009 WL 1598420, at *4 (E.D. Ky. June 4, 2009) ("Specific federal rules govern the discovery process in federal courts. The Court is not empowered either to dispense legal advice to parties, or to practice their case on their behalf.") (citations omitted). If the Court were to offer advice to a party, then it would effectively abdicate its impartiality by aiding that party's case, potentially at the expense of the opposing party. *Smith*, 2011 WL 2623301, at *1. The ironclad prohibition on courts rendering legal advice to litigants does not change merely because a party elects to proceed *pro se. Id.; see also McCaskle v. Wiggins*, 465 U.S. 168, 183–84 (1984). Accordingly, the Court reviews the

motion to dismiss under the three legal theories Defendant supplied, namely Rule 11, § 1927, and inherent authority (Doc. No. 31 at p. 1).

### 1. Rule of Civil Procedure 11

In this matter, Defendant failed to comply with the plain language of Rule 11. The record reflects that not only did Defendant fail to attempt proper service prior to filing her Motion for Sanctions, but she also failed to attempt any kind of notice at all (Doc. No. 45 at p. 5). Indeed, Defendant agrees that she failed to comply with such safe harbor requirement and requests only leniency in attorney fee determinations, which she views as "punitive and unnecessary" (Doc. No. 63 at p. 4-5). Plaintiff was thus denied an opportunity to amend or appropriately correct its conduct within a 21-day period (Doc. No. 45 at p. 5). The Sixth Circuit is unambiguous that sanctions under Rule 11 are *only* available when the filing occurs after the 21-day safe harbor period. *Ridder*, 109 F.3d at 297 (emphasis added). Because Defendant is not in compliance with Rule 11's procedural constraints, the Court cannot proceed in its analysis of the merits, however unavailing.

### 2. 28 U.S.C. § 1927

At issue in the context of § 1927 is the integrity of the litigation process. *See Jones*, 789 F.2d at 1230. That is, from an objective viewpoint, whether frivolous claims were filed by Plaintiff vis a vis multiplicative tactics that have so harassed or otherwise delayed court processes as to amount to abuse. *Id*. It seems readily apparent that contentions limited to the commencement of the instant matter, the filing of a single motion and later voluntary withdrawal of that motion, vague and conclusory allegations of out-of-court communications with employers, and scheduling of a 26(f) conference are insufficient without more (Doc. No. 31 at p. 3).

First, the initial filing of litigation cannot logically be construed as multiplicative. Indeed, it is the first contact with the court system. Similarly, a single filing of a motion cannot be

reasonably understood to be multiplicative. This is especially apparent considering Defendant's ten pending motions (Doc. Nos. 12, 29, 30, 31, 35, 37, 38, 41, and 51). That is without further detail into Defendant's various accompanying supplements to her pending motions (*See, e.g.,* Doc. Nos. 32, 42, 48, and 49). Next, out-of-court communications are not applicable to tactics that harass or otherwise delay court processes, even if Defendant were correct that such communications harassed her personally.

Defendant's argument regarding scheduling of the 26(f) conferences is perhaps, in part, her strongest argument.[8] However, parties "must confer as soon as practicable —and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due." Fed. R. Civ. P. 26(f). An October 6, 2025, conference is early, and yet not impermissible by the federal rules. *Id*. Further, a conclusory claim that "Plaintiff attempted to force [a] Rule 26(f) conference[]" does not provide the Court with sufficient facts to make any determination, let alone a determination for sanctions (Doc. No. 31 at p. 3). Moreover, the actual 26(f) conference was held on November 17, 2025, which is reasonably within the temporal frame of the initial case management conference on December 10, 2025 (Doc. Nos. 43 at p. 1, 45-1 at p. 1, and 52).

Again, while Defendant has decided to proceed without counsel, to proceed *pro se* is not equivalent to carte blanche permission to so abuse court processes to air personal grievances regarding the adversarial nature of and related pressures in litigation, rather than legitimate litigation purposes (Doc. No. 63 at p. 2). *See, e.g., Mid-America Apartment Communities, Inc. v. Philipson*, No. 2:23-cv-2186-SHL-cgc, 2025 WL 3110658, at *3 (W.D. Tenn. Oct. 17, 2025) (citing *Wooten v. Fed. Med. Ctr. Lexington*, No. 5:22-CV-52-REW, 2022 WL 1275624, at *2 (E.D.

---

[8]  The Court agrees with Plaintiff that the first alleged 26(f) conference could not have occurred on September 24, 2025, as the instant matter was not filed until October 2, 2025 (Doc. No. 1).

Ky. Apr. 28, 2022)). Even where good faith may have been the intent, as Defendant so often professes, it is of the strangest form of paradox to seek court-imposed sanctions for baseless filings and vexatious multiplication by means of multiple frivolous filings that are irrelevant to this matter in form or time, unspecific in substance, and procedurally defective (*Id*.).

### 3. Inherent Authority

There is decidedly nothing in the other sanctioning mechanisms or prior cases interpreting them that warrant a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorneys' fees as a sanction for bad-faith conduct. *Chambers*, 501 U.S. at 50. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. *Id*.

However, even where the alleged bad faith conduct was beyond the reach of Rule 11 or § 1927, such arguments are still meritless under an inherent authority analysis. Allegations that precede this litigation, namely retaliatory termination of Defendant, withholding of earned commissions thereafter, and subsequent internal communications with staff, fail to substantiate sanctionable offenses now (Doc. No. 31 at p. 3-4). That is, because Defendant fails to allege any underlying bad faith conduct in the course of litigation or specific attempt to perpetrate fraud on the Court, the limited reach of inherent authority is also an inappropriate means with which to seek sanctions. *See, e.g., id*. at 51.

### 4. Attorneys' Fees

Plaintiff seeks reasonable attorneys' fees incurred in opposing Defendant's Motion for Sanctions under Rule 11 (Doc. Nos. 45 at p. 24-25 and 61 at p. 9-10). Plaintiff is silent, however, as to any specific amount for such attorneys' fees (*Id*.).

14

The Court agrees that Defendant's arguments for sanctions are without merit, particularly so in light of her failure to comply with the 21-day safe harbor threshold. Fed. R. Civ. P. 11(c)(2). However, the Court will not award additional monetary sanctions where Plaintiff has not provided any declarations, itemized billing records, or time entries. *See Lea v. U.S. Dep't of Agric.*, No. 3:21-cv-00468, 2024 WL 3639610, at *4 (M.D. Tenn. Aug. 1, 2024). Indeed, Plaintiff provided no support at all in this respect (Doc. Nos. 45 at p. 24-25 and 61 at p. 9-10). Without more showing which of the three attorneys of record worked on the Motion for Sanctions, the length of time necessary to complete their opposition, or the hourly rates for any attorneys or staff members who billed to the matter, the Court is unable to determine what would be reasonable. *Lea*, 2024 WL 3639610, at *4. Thus, the Court is unwilling to determine whether any attorneys' fees should be directed at all. Fed. R. Civ. P. 11(c)(4); 28 U.S.C. § 1927.

**B.    Motions to File Exhibits**

**1.    Motion to File Audio Exhibits**

On November 24, 2025, Defendant filed her Motion to File Audio Exhibits (Doc. No. 30) to accompany her Motion for Sanctions (Doc. No. 31). On December 8, 2025, Plaintiff filed a response (Doc. No. 44), in opposition to the Motion to File Audio Exhibits.[9] On December 9, 2025, Defendant filed her reply (Doc. No. 46).

Defendant seeks leave to file four audio recordings to be considered with the "Highlight Summary" exhibit attached to her Motion for Sanctions (Doc. No. 30; see also Doc. Nos. 31-1 and 33). According to Defendant, the recordings "directly relate[] to service, compliance, alleged

---

[9]    Because Defendant chose not to provide the audio recordings to Plaintiff (Doc. No. 46 at p. 2), Plaintiff did not have the benefit of referencing the underlying recordings in advance of its opposition (Doc. No. 44 at p. 4).

breaches, and misrepresentations made during settlement communications and later repeated in this litigation." (Doc. No. 46 at p. 1).

However, all four audio exhibits are recordings of an internal July 28, 2025, meeting between Plaintiff and Defendant that preceded the instant matter[10] (Doc. No. 30 at p.1-2) and, therefore, are not relevant to the issue of sanctions now. Fed. R. Civ. P. 11(b); *see also* 5A Charles Alan Wright & Arthur R. Miller, Fed. Prac. and Pro. § 1333 (4th ed. supp. Apr. 2023). Further, verbal communications are completely unrelated to pleadings or motions abuse. *Id*. Moreover, while Defendant maintains that such communications were "repeated in this litigation", Defendant does not provide even a single factual allegation as to any specific occurrence, let alone the who, what, where, why, and arguably most important to a question of sanctions, how or in what medium (Doc. No. 46 at p. 1).

### 2.      Second Motion to File Audio Exhibits

Also, on December 9, 2025, Defendant filed her Second Motion to File Audio Exhibits (Doc. No. 51), wherein Defendant seeks leave to file two additional audio recordings in support of her Motion for Sanctions. According to Plaintiff, such recordings are essential for "authentication of transcripts attached to [Defendant's] Supplemental Declaration, rebutting the Declaration of Plaintiff's counsel [], and establishing the context of issues relevant to sanctions, retaliation, and witness treatment" (Doc. No. 51 at p. 2). On December 23, 2025, Plaintiff filed a response (Doc. No. 62), in opposition to the Second Motion to File Audio Exhibits. On December 30, 2025, Defendant filed her reply (Doc. No. 64).

Again, both recordings predate the instant matter, consist of only verbal communications, and Defendant makes no attempt to tie such occurrences to the instant litigation beyond some

---

[10]      The instant matter was filed on October 2, 2025 (Doc. No. 1).

generalized attempt to show a pattern or practice of Plaintiff (Doc. No. 51 at p. 1). Additionally, Defendant not only fails to provide information beyond the date of the recording, but also only vaguely references why she seeks to supply the recordings at all (*Id*. at p. 1-2). Notably, Defendant neither makes a direct reference to the person(s) involved in the September 11, 2025, recording, nor provides any context as to what communications were captured in the first place (*Id*. at p. 1).

Consistent with the foregoing, because Defendant's Motion to File Audio Exhibits and Second Motion to File Audio Exhibits are limited to, and only supplied in support of, an otherwise unsuccessful Motion for Sanctions, the Court need not reach the merits of the audio recordings, however, unavailing. As such, it is recommended that both motions be denied as moot.

## IV.        Recommendation

For the foregoing reasons,

IT IS RECOMMENDED that the Motion for Sanctions (Doc. No. 31) be DENIED.

IT IS FURTHER RECOMMENDED that the Motion to File Audio Exhibits (Doc. No. 30) be DENIED AS MOOT.

IT IS FURTHER RECOMMENDED that the Second Motion to File Audio Exhibits (Doc. No. 51) be DENIED AS MOOT.

Any party has 14 days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within 14 days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within 14 days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 6th day of April, 2026.

_____
LUKE A. EVANS
United States Magistrate Judge