APARTMENT INSIDERS, LLC,
      Plaintiff, Counter-Defendant,

v.

MIRAKLE HENSEN,
      Defendant, Counter-Plaintiff.

Case No. 3:25-cv-01137

Judge Eli J. Richardson
Magistrate Judge Luke A. Evans

## <u>MEMORANDUM ORDER</u>

Pending before the Court are the following five motions[1] filed by *pro se* Defendant and Counter-Plaintiff, Mirakle Hensen (hereinafter, "Defendant"), including: (i) "Motion For Leave To File Exhibits Under Temporary Seal" (Doc. No. 29, "Motion to File Under Seal"), (ii) "Motion For Protective Order" (Doc. No 35, "Motion for Protective Order"), (iii) "Motion To Quash Subpoena To Carolina Apartment Locating" (Doc. No. 37, "Motion to Quash"), (iv) "Combined Notice Of Retaliation, Motion For Protective Orders, Supplement To Motion For Sanctions, Notice Of Supplemental Evidence, And Motion To Expedite (Doc. No. 38, "Second Motion for Protective Order and Motion to Expedite"), and (v) "Motion To Withdraw Motion To File Exhibits Under Seal" (Doc. No. 41, "Motion to Withdraw").

For the reasons described herein, the Motion to File Under Seal is DENIED (Doc. No. 29), the Motion for Protective Order is DENIED (Doc. No 35), the Motion to Quash is DENIED (Doc. No. 37), the Second Motion for Protective Order and Motion to Expedite is DENIED (Doc. No. 38), and the Motion to Withdraw is GRANTED (Doc. No. 41).

---

[1] Defendant's pending motions, including her Motion to File Audio Exhibits (Doc. No. 30), Motion for Sanctions (Doc. No. 31), and Second Motion to File Audio Exhibits (Doc. No. 51), are addressed in a report and recommendation issued separately.

## 1. Factual Background

### a. The Instant Matter

Plaintiff and Counter-Defendant, Apartment Insiders, LLC (hereinafter, "Plaintiff"),[2] filed the instant matter on October 2, 2025 (Doc. No. 1). Defendant was a real estate agent in Plaintiff's Charlotte, North Carolina office, until her termination on July 30, 2025 (*Id*. at 1 and 4). The complaint sets forth claims for trade secret misappropriation and breach of contract (*Id*. at 5-6).

Prior to Defendant's termination, Plaintiff claims Defendant accessed "business-related information" online via a cloud drive and downloaded "at least two compilations that identify [Plaintiff's] landlords in the Charlotte area and the referral fees they pay" (Doc. No. 15 at 7-8). Plaintiff also claims Defendant emailed herself the "last three months of [her] production reports", which effectively list the tenants she placed, where she placed them, and the start and end dates of their leases (*Id*.). After her termination, Plaintiff contends Defendant joined a "direct competitor"—Carolina Apartment Locating ("CAL")[3]—and is now, on behalf of CAL,[4] actively "pursuing [] [Plaintiff's] tenants and landlords in violation of the[ir] Business Protection Agreement" (*Id*.). Plaintiff also notes that (i) no tenants in Defendant's pipeline have since sought Plaintiff's services and (ii) Defendant blocked Plaintiff's personnel from viewing a TikTok account regularly used for marketing purposes (*Id*. at 8).

---

[2]     Plaintiff is a Nashville-based apartment locating company that also operates in Charlotte, North Carolina (Doc. No. 15 at 1).

[3]     CAL discontinued its relationship with Plaintiff on or about September 17, 2025 (Doc. No. 12-1 at p. 34).

[4]     CAL is not a named defendant in the instant matter, and Plaintiff has not directly accused CAL of misconduct (Doc. Nos. 1 and 56 at p. 6).

### b.    The Pending Motions

All five motions relate to (i) Plaintiff's third-party subpoenas on CAL and Defendant's current brokerage—the Apartment Brothers, LLC (Doc. Nos. 35 at p.1, 37 at p. 1, 38 at p. 4, 58 at p.1, 59 at p. 1-2), and (ii) Plaintiff's termination of third-party witness, Renee Rossignol (Doc. Nos. 38 at p. 1 and 59 at p. 4).

### i.    Plaintiff's Subpoena of Third-Party Employer

Defendant takes issue with third-party subpoenas and communications that target her employers as they reportedly "cause[] harm, intimidation, [and] undue burden" (Doc. No. 35 at p. 1). According to Defendant, the subpoenas directly caused disaffiliation with prior brokerages[5] and, under Rule 26, are otherwise retaliatory, overbroad, and premature (*Id*. at 1-2). Additionally, Defendant maintains that her employers are not relevant to Plaintiff's underlying complaint, and the subpoena is not proportional in light of the negative effect on her employment (Doc. Nos. 35 at p. 2, 37 at p. 1-3, and 58 at p.1).

For context, specifically with respect to case management, the 26(f) conference was held on November 17, 2025 (Doc. Nos. 43 at p. 1 and 45-1 at p. 1), the initial case management conference was held on December 10, 2025 (Doc. No. 6), and the initial case management order was filed on December 12, 2025 (Doc. No. 52).[6] Plaintiff issued the subpoenas on November 29, 2025 (Doc. No. 55 at p. 2).

As for the subpoenas at issue, Defendant maintains that the subpoena is premature because discovery had not formally begun and the Court had not approved the Rule 26(f) schedule (Doc.

---

[5]    According to Defendant, she has lost two prior jobs because of Plaintiff's prior communications (Doc. No. 37 at p.3).

[6]    Pursuant to the initial case management order, the parties must serve all written discovery no later than May 11, 2026, and complete all written discovery and deposition of fact witnesses by

Nos. 35 at p. 2 and 37 at p. 1). In response, Plaintiff notes that the subpoenas were issued after the 26(f) conference and before the initial case management conference, and subsequently questions whether Defendant confused the conferences (Doc. No. 55 at p. 9). Defendant also claims that she "had no official notice prior outside of vague assertions of [the] subpoena" (Doc. No. 38 at p. 6). However, Plaintiff states that Defendant was provided copies of the subpoenas on November 25, 2025 (Doc. Nos. 45-1 at p. 1 and 55 at p. 2).

### ii. Plaintiff's Termination of Third-Party Witness

Like Defendant, Ms. Rossignol was a real estate agent of Plaintiff until her termination on or about November 30, 2025 (Doc. No. 38 at p. 1). Defendant filed a declaration from Ms. Rossignol on December 4, 2025 (Doc. No. 41-2). In support of her Motion for Protective Order, Defendant alleges that Ms. Rossignol's termination was retaliation for her participation in the instant matter (Doc. No. 38 at p. 2). In opposition, Plaintiff maintains that Ms. Rossignol was terminated for "forwarding internal, confidential, and privileged information to [a] personal email address and shar[ing] it externally" (Doc. No. 56 at p. 2).

## 2. Legal Standard

### a. Motion for Protective Orders

Upon a showing of "good cause" a court may issue a protective order designed "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The burden of establishing "good cause" rests with the moving party. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citation omitted). To satisfy this burden, the movant must provide specific reasons justifying entry of a protective order and may not rely on conclusory

---

September 10, 2026 (Doc. No. 52). Additionally, all motions related to fact discovery must be filed no later than September 1, 2026 (*Id*.).

statements. *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). Ultimately, whether to grant a protective order is within the discretion of the trial court. *Coleman v. American Red Cross*, 979 F.2d 1135, 1138 (6th Cir. 1992).

"A subpoena that is overbroad on its face may subject a person to undue burden." *Topolewski v. Quorum Health Res., LLC*, No. 3:10-1220, 2013 WL 99843, at *3 (M.D. Tenn. Jan. 8, 2013) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49-51 (S.D.N.Y. 1996)). However, only "[a] *party or any person from whom discovery is sought* may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1) (emphasis added).

Moreover, such motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. *Id*. Similarly, pursuant to Local Rule 37.01(a), before filing a motion for a protective order, "counsel for the parties must confer in good faith in an effort to resolve by agreement the issues raised." M.D. Tenn. L.R. 37.01(a).

### b. Motion to Quash

#### i. Standing

As a threshold issue, the Court must determine whether a party has standing to challenge a subpoena issued to a non-party. *Pictsweet Co., v. R.D. Offutt Co.*, No. 3:19-cv-0722, 2020 WL 12968432, at *3 (M.D. Tenn. Apr. 23, 2020). The Sixth Circuit has stated that "[o]rdinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." 9A Charles Alan Wright and Arthur R. Miller, et al., Fed. Prac. and P. § 2549 (3d ed.); *see also U.S. v. Llanez-Garcia*, 735 F. 3d 483, 498-499 (6th Cir. 2013). However, exceptions exist if the party

"claims some personal right or privilege with regard to the documents sought." *Lewis Environmental, Inc. v. Emergency Response & Training Solutions, Inc.*, 2019 WL 285641, at *2 (S.D. Ohio Jan. 22, 2019) (quoting *Mann v. Univ. of Cincinnati*, 1997 WL 280188, at *4, 114 F.3d 1188 (6th Cir. May 27, 1997) (per curiam)). Such rights or privileges have been recognized with respect to personal bank records, information in a personnel file, corporate bank records, or Indian tribal records. *Hackmann v. Auto Owners, Ins. Co.*, 2009 WL 330314, at *1 (S.D. Ohio Feb. 6, 2009). That documents are confidential "is not in itself grounds for quashing a subpoena." *Id*. at *2.

"[T]he party which seeks to quash the subpoena bears a heavy burden of proof." *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:20-cv-01023, 2021 WL 5882653, at *1 (M.D. Tenn. Dec. 13, 2021) (citation omitted); *Sandlin v. Citibank*, No. 15-2768-JTF-dkv, 2017 WL 9538516, at *2 (W.D. Tenn. Oct. 31, 2017) (holding that relevancy alone was not sufficient to quash a subpoena to a non-party when the party made no showing of proprietary information or personal right). If a motion to quash has been made, the decision is left to the district court's discretion. *Strike 3 Holdings,* LLC v. Doe, No. 3:23-cv-01124, 2024 WL 5705633, at *1 (M.D. Tenn. Mar. 4, 2024) (citing U.*S. v. Hughes*, 895 F.2d 1135, 1145 (6th Cir. 1990)).

### ii. Federal Rules of Civil Procedure and Local Rules

Rule 45 of the Federal Rules of Civil Procedure explains when a court must and when a court may quash or modify a subpoena. Fed. R. Civ. P. 45. The court is required to quash or modify a subpoena that (i) provides an inadequate amount of time to reply, (ii) requires compliance beyond the geographical limits in Rule 45(c), (iii) demands disclosure of protected or privileged information, or (iv) places an undue burden on a person. Fed. R. Civ. P. 45(d)(3)(A). "Whether a subpoena imposes an 'undue burden' upon a witness is a case specific inquiry. *In re CareSource*

6

*Mgmt. Grp. Co.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013) (quoting *Am. Elec. Power Co. v. U.S.*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). Such inquiry turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Id*.

Rule 45 establishes that the "place of compliance" for a subpoena seeking "production of documents, electronically stored information, or tangible things" is "a place within 100 miles of where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(2)(A). The party serving a subpoena may move to compel production in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also* Fed. R. Civ. P. 37(a)(2) ("A motion for an order to [compel discovery from] a nonparty must be made in the court where the discovery is or will be taken."). Similarly, a party seeking to quash a subpoena may do so in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A). Indeed, in all but the rarest cases, "a motion to quash a subpoena "still must be made in the district where compliance with the subpoena is required and not where the underlying action is pending." *Fitzgerald Truck Parts & Sales, LLC v. U.S.*, No. 2:20-cv-00026, 2023 WL 1974720, at *3 (M.D. Tenn. Feb. 13, 2013); *see also* 9A Charles Alan Wright & Arthur R. Miller, Fed. Prac. and P. § 2463.1 (3d ed.) (collecting cases). "

Finally, pursuant to Local Rule 37.01(a), before filing a motion to quash a subpoena, "counsel for the parties must confer in good faith in an effort to resolve by agreement the issues raised." M.D. Tenn. L. R. 37.01(a).

### 3. Analysis

Prior to reaching the various procedural defects and unavailing merits of Defendant's pending motions, it is again incumbent on this Court to preface the following analysis for

Defendant's benefit.[7] This is particularly apt because Defendant appears to repeatedly characterize procedural guardrails as a penalty or insurmountable blocking mechanism for *pro se* litigants generally (Doc. No. 59 at p. 5).

Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *see, e.g.*, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), *pro se* litigants are not entirely exempt from the requirements of the Federal Rules of Civil Procedure. *See, e.g.*, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Indeed, such lenient treatment generally accorded to *pro se* litigants has limits. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991).

By means of example, Defendant contends that because there was "no realistic path to resolve disputes informally" she did not seek conferral prior to filing her Motion for Protective Order, Motion to Quash, and Second Motion for Protective Order (Doc. No. 59 at p. 2-3). However, even if Plaintiff refused to negotiate respective to the underlying merits of the case, such refusal would not necessarily indicate a refusal to confer respective to individual motions during the course of litigation (*Id*). The Court agrees with Defendant that it is unlikely she pursued such defective filings on the basis of strategy (*Id*. at 3). Indeed, it would appear Defendant had no strategy at all. However, private negotiations between parties concerning the merits of litigation do not extend to baseline procedural safeguards, especially regarding conferrals that provide Plaintiff with an opportunity to correct bad actions, if any. Accordingly, procedural defects with respect to conferral, even when involving the professed best efforts of a *pro se* litigant, cannot be overcome. Fed. R. Civ. P. 45; M.D. Tenn. L. R. 37.01(a).

---

[7] Defendant's other pending motions are addressed in a report and recommendation issued separately. *See supra* n. 1.

Although the Court is sympathetic to the difficulties of navigating the Federal Rules of Civil Procedure without a legal background, it is imperative that Defendant understands civil procedure as a means for orderly and expeditious disposition of cases. More importantly, Defendant must understand such procedural rules exist to ensure fairness, not to shield bad actors or otherwise prevent review on the merits before the Court.

While acknowledging Defendant's choice to proceed *pro se* in this matter, Defendant is nonetheless advised to review the Federal Rules of Civil Procedure, as well as this Court's Local Rules, to avoid insufficient or otherwise procedurally defective filings in the future.

### a. Motion to File Under Seal

On November 20, 2025, Defendant filed her Motion to File Under Seal (Doc. No. 29). Defendant did not, however, include either exhibit to her Motion to File Under Seal (*Id*.). On December 4, 2025, Plaintiff filed a response (Doc. No. 40), in opposition to the Motion to File Under Seal.

Also, on December 4, 2025, Defendant filed a Motion to Withdraw (Doc. No. 41), wherein Defendant withdrew her Motion to File Under Seal.  Plaintiff did not file an opposition.

Accordingly, the Motion to File Under Seal (Doc. No. 29) is DENIED and the Motion to Withdraw (Doc. No. 41) is GRANTED.

### b. Motion for Protective Order

#### i. Defendant

On December 1, 2025, Defendant filed a Motion for Protective Order, wherein Defendant seeks to prevent Plaintiff from third-party subpoenas and communications that target her employer (Doc. No. 35 at p. 1). On December 15, 2025, Plaintiff filed a response (Doc. No. 54), in opposition

9

to the Motion for Protective Order. On December 19, 2025, Defendant filed her reply (Doc. No. 58).

Plaintiff makes conclusory remarks as to the subpoena being premature, overbroad, and irrelevant (Doc. No. 35 at p. 2). Additionally, Plaintiff contends that the subpoena and other communications cause severe harm because it threatens her employment (*Id*. at p. 1).

Defendant may seek a protective order, as a party to the litigation, on behalf of CAL. Fed. R. Civ. P. 26(c)(1). However, while an overbroad subpoena may subject Defendant to an undue burden, Defendant has not provided specific factual reasons justifying entry of a protective order beyond the conclusory assertion that the subpoena is irrelevant and overbroad. (Doc. No. 35 at p. 1-2) *Nemir*, 381 F.3d at 550; *Topolewski*, 2013 WL 99843, at *3.

Moreover, it is Defendant's contention that involvement of her employers is somehow not relevant to the underlying claim (Doc. No. 35 at p. 1). However, regardless of whether CAL is a named party or not, Plaintiff has altogether maintained its contention that Defendant joined CAL after her termination and subsequently, on behalf of CAL, actively pursued Plaintiff's tenants and landlords (Doc. No. 15 at 7-8). For this reason, without more, the Court cannot guess as to *why* a protective order should be warranted.

Further, Defendant mischaracterizes the subpoena itself as demanding "all communications," "all tenant files," "all landlord files," and "all documents involving [Defendant]," including documents that predate her employment at CAL (Doc. Nos. 35 at p. 2 and 38-1). However, the actual subpoena language seeks communications and documents that are substantially tailored in scope. (Doc. Nos. 38-1 at p. 4). Indeed, all 11 requests include limiting qualifiers, including: (i) on or before her termination, "sent to[] or received from [Defendant]", "reference [Defendant]", and "provided to, received from, or generated by [Defendant]", and (ii)

10

while at CAL, documents that Defendant introduced, tenants Defendant assisted or placed, landlords Defendant introduced and otherwise "met, communicated, or worked" (*Id*.).

Additionally, Defendant did not include any certification that she has in good faith conferred or attempted to confer with Plaintiff in order to resolve this dispute without court action. Fed. R. Civ. P. 26(c)(1); M.D. Tenn. 37.01(a). Indeed, by her own admission, Defendant has deliberately chosen not to confer at all (Doc. No. 59 at p. 2-3).

Based on the foregoing, the Motion for Protective Order (Doc. No. 35) is thus DENIED.

### ii. Non-Party Witness

Additionally, on December 3, 2025, Defendant filed her Second Motion for Protective Order (Doc. No. 38), wherein Defendant seeks a protective order for Ms. Rossignol (*Id*. at p. 2). On December 18, 2025, Plaintiff filed a response (Doc. No. 56), in opposition. On December 19, 2025, Defendant filed her reply (Doc. No. 59).

There are three issues with Defendant's request on Ms. Rossignol's behalf. First, Ms. Rossignol is neither a party to this litigation, nor an individual from whom Plaintiff is seeking discovery (Doc. No. 56 at p. 3). Fed. R. Civ. P. 26(c)(1); *see Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, No. 3:13-CV-1196, 2016 WL 11786198, at *5 (M.D. Tenn. May 16, 2016). Second, Defendant has not provided specific factual reasons justifying entry of a protective order beyond the conclusory assertion that Ms. Rossignol was terminated for retaliatory purposes (Doc. No. 38 at p. 2). *See Nemir*, 381 F.3d at 550. Finally, Defendant again did not include any certification that she has in good faith conferred or attempted to confer with Plaintiff in order to resolve this dispute without court action (Doc. No. 59 at p. 2-3). Fed. R. Civ. P. 26(c)(1); M.D. Tenn. 37.01(a).

Thus, for the foregoing reasons, the Second Motion for Protective Order (Doc. No. 38) is DENIED. Additionally, considering the foregoing analysis, the Motion to Expedite (*Id*.) is DENIED.

### c. Motion to Quash

On December 1, 2025, Defendant filed her Motion to Quash (Doc. No. 37). On December 15, 2025, Plaintiff filed a response (Doc. No. 55), in opposition to the Motion to Quash. Defendant did not file a reply.

Defendant seeks to quash the third-party subpoena under Federal Rule of Civil Procedure 45 (Doc. No. 37 at p. 1-3). Like her Motion for Protective Order (Doc. No. 35), Plaintiff again makes conclusory remarks as to the subpoena being premature, overbroad, and irrelevant (Doc. No. 37 at p. 1). Additionally, Plaintiff again contends that the subpoena imposes an undue burden because it threatens her employment (*Id*. at p. 2).

Here, Defendant fails to demonstrate that she has standing to quash the subpoena on behalf of CAL by personal right or privilege. *Pictsweet*, 2020 WL 12968432 at *3. Indeed, she supplies no factual allegations or legal arguments whatsoever in that regard. *Id.; see also Sandlin*, 2017 WL 9538516, at *2. "Specific federal rules govern the discovery process in federal courts. The Court is not empowered either to dispense legal advice to parties, or to practice their case on their behalf." *Burke v. Morgan*, No. 06–CV–348–JMH, 2009 WL 1598420, at *4 (E.D. Ky. June 4, 2009) (citations omitted); *see Smith v. Palmer*, No. 11–CV–12765, 2011 WL 2623301, at *1 (July 5, 2011) (collection of cases). If the Court were to offer advice to a party, then it would effectively abdicate its impartiality by aiding that party's case, potentially at the expense of the opposing party. *Smith*, 2011 WL 2623301, at *1. The ironclad prohibition on courts rendering legal advice to litigants does not change merely because a party elects to proceed *pro se. Id.; see also McCaskle*

*v. Wiggins*, 465 U.S. 168, 183–84 (1984). Accordingly, the Court will not make arguments for Defendant, even where she proceeds *pro se*.

Even if Defendant might overcome the threshold matter of standing, she also fails to demonstrate *how* the plain language of Federal Rule of Civil Procedure 45 may be overcome beyond a general contention that she does not "concede any jurisdictional argument simply by having asked this Court for discovery oversight" (Doc. No. 59 at p. 5).[8] Fed. R. Civ. P. 45. Moreover, Defendant generally contends that she did not comply with requirements to confer prior to filing her motions because such conferral would have likely been fruitless (Doc. No. 59 at p. 2-3). M.D. Tenn. L. R. 37.01(a). Such bald contentions are insufficient to overcome the plain language of Federal Rule 45 or Local Rule 37.01(a), respectively, *pro se* litigant or not. *Id.*; *See, e.g.*, *Jourdan*, 951 F.2d at 110.

Accordingly, considering Defendant's lack of standing and failure to comply with the plain language of Federal Rule 45 and Local Rule 37.01, the Motion to Quash (Doc. No. 37) is DENIED.

It is so ORDERED.

LUKE A. EVANS
United States Magistrate Judge

---

[8]    Because North Carolina is the place where CAL reportedly operates out of, the proper venue is North Carolina, not Tennessee (Doc. Nos. 38-1 and 55 at p. 4).