UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

APARTMENT INSIDERS, LLC,

      Plaintiff, Counter-Defendant,

v.

MIRAKLE HENSEN,

      Defendant, Counter-Plaintiff.

Case No. 3:25-cv-01137

Judge Eli J. Richardson
Magistrate Judge Luke A. Evans

To:    The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 636(b)(1)(A) & (B), this matter was referred to the Magistrate Judge for report and recommendations on dispositive motions (Doc. Nos. 7 and 60). Pending before the Court is the "Motion to Dismiss Pursuant to Rule 12(b)(6)" (Doc. No. 12, "Motion to Dismiss"). For the following reasons, it is recommended that the Motion to Dismiss be denied.

## I.    Background

### A.    Factual Background

Plaintiff and Counter-Defendant, Apartment Insiders, LLC,[1] filed the instant matter against Defendant and Counter-Plaintiff, Mirakle Hensen (Doc. No. 1 at p. 1). Hensen was a real estate agent in Apartment Insiders' Charlotte, North Carolina office, until her termination on July 30,

---

[1]    Apartment Insiders is a Nashville-based apartment locating company that also operates in Charlotte, North Carolina (Doc. Nos. 1 at p. 1 and 15 at p. 1).

2025 (*Id.* at p. 4).[2] The complaint sets forth claims for trade secret misappropriation and breach of contract (*Id.* at p. 5-6).

The parties' relationship is subject to a Business Protection Agreement ("BPA") (*Id.* at p. 1). The BPA contains five provisions relevant to the Motion to Dismiss:

1. Confidentiality. During and following the term of this Agreement, except on behalf of the Company, I will not use or disclose any information that I have generated or obtained at any time during my relationship with the Company that is a trade secret, information not generally known to or readily ascertainable by real estate agents outside of the Company, or information that the Company or I are contractually or ethically obligated to protect from unauthorized use or disclosure (collectively, "Company Information").

2. Client Interference. During the term of this Agreement and for eighteen (18) months thereafter, except on behalf of the Company, I will not assist, offer to assist, or help anyone else assist or offer to assist any client of the Company with finding or securing residential rental housing.

3. Landlord Interference. During the term of this Agreement and for eighteen (18) months thereafter, I will not discourage or help anyone else discourage any landlord from doing business with the Company. For purposes of this Agreement, landlords include, without limitation, property management companies that the Company does business with or would like to do business with, property owners, property investors, and property debt relationships.

4. No Disparagement/Defamation. I will not disparage the Company, any real estate agents affiliated with the Company, or any of their products or services to anyone during the term of this Agreement or for 18 months thereafter. Likewise, I will not defame the Company, any real estate agents affiliated with the Company, or any of their products or services during the term of this Agreement or any time thereafter.

5. Return of Property. Within three (3) business days of the termination of my relationship with the Company or the Company's request at any time, I will return all Company property in my possession, including, without limitation, all equipment, tools, devices, keys and other means of accessing Company facilities and property, login information for Company accounts, Company Information, any other physical or electronic information that I have obtained or generated in connection with my relationship with the Company, and anything belonging to the Company's clients.

---

[2] Apartment Insiders contends that Hensen was terminated for "refus[ing] to comply with [Apartment Insiders'] policy against introducing tenants to landlords with which [Apartment Insiders] did not have a contractual relationship" (Doc. No. 1 at p. 4).

2

(Doc. Nos. 1 at p. 4-5 and 1-1 at §§ 4-6, 8-9).

Prior to Hensen's termination, Apartment Insiders claims that Hensen accessed "business-related information"[3] online via a cloud drive and downloaded "at least two compilations that identify [Apartment Insiders'] landlords in the Charlotte area and the referral fees they pay" (Doc. No. 15 at p. 7-8). Apartment Insiders also claims that Hensen emailed herself the "last three months of [her] production reports", which effectively list the tenants that [Hensen] placed, where she placed them, and the start and end dates of their leases (*Id*.). After Hensen's termination, Apartment Insiders contends that Hensen joined a "direct competitor"—Carolina Apartment Locating ("CAL")[4]—and is now, on behalf of CAL,[5] actively "pursuing [] [Apartment Insiders'] tenants and landlords in violation of the[ir] Business Protection Agreement" (*Id*.). Apartment Insiders also notes that (i) no tenants in Hensen's pipeline have since sought Apartment Insiders' services and (ii) Hensen blocked Apartment Insiders' personnel from viewing a TikTok account regularly used for marketing purposes (*Id*. at p. 8).

### B.     Procedural Background

Apartment Insiders filed a breach of contract claim against Hensen in a related state court proceeding (the "Circuit Court Case") on August 22, 2025 (*Id*.). On September 15, 2025, a temporary restraining order was entered against Hensen in the Circuit Court for Davidson County, Tennessee (the "Circuit Court"), temporarily enjoining Hensen from further violations of the BPA (*Id*.). On September 25, 2025, however, the Circuit Court denied Apartment Insiders' motion for

---

[3]     Apartment Insiders reportedly defines such information as nonpublic data "primarily stored in a password-protected storage site", which includes "leads, compilations of [] names, contact information, [] leasing information, and [] referral fee information" (Doc. No. 1 at p. 3-4).

[4]     CAL discontinued its relationship with Hensen on or about September 17, 2025 (Doc. No. 12-1 at p. 34).

[5]     CAL is not a named defendant in the instant matter, and Apartment Insiders has not directly accused CAL of misconduct (Doc. Nos. 1 and 56 at p. 6).

3

temporary injunction because "the client restrictions in [the BPA's] non-compete [we]re not enforceable as written" at the time.[6] (Doc. No. 12-1 at 15). Apartment Insiders then voluntarily dismissed the Circuit Court Case without prejudice with the intent to "refile in federal court and add a [trade secret misappropriation] claim" (Doc. Nos. 12-1 at p. 6 and 15 at p. 9).

Apartment Insiders filed the instant matter against Hensen with claims for both trade secret misappropriation and breach of contract on October 2, 2025 (Doc. No. 1 at p. 5-6). Apartment Insiders then filed its motion for temporary restraining order on October 24, 2025 (Doc. Nos. 14-15). On October 27, 2025, this Court denied Apartment Insiders' motion based on "'thinly disguised forum shopping' brought on by its dissatisfaction with unfavorable 'rulings in state court'" (Doc. No. 16 at p. 12). However, this Court noted that such rationale was limited to denying the same relief sought in a different forum, and not at all intended "to say that this Court is bent on ensuring or can use its discretion to ensure—due to distaste over forum-shopping—that [Apartment Insiders] receive no relief in this Court." (*Id*. at p. 13).

Hensen filed the instant Motion to Dismiss on October 24, 2025 (Doc. No. 12). Apartment Insiders filed its response in opposition on November 7, 2025 (Doc. No. 20), and Hensen filed her reply on November 13, 2025 (Doc. No. 21). This matter is ripe for consideration.

## II. Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the

---

[6] Because the non-compete provisions in the BPA could only be "enforced with respect to current clients" and there was "insufficient evidence in the record [at the time] for the [c]ourt to determine the identities of [Apartment Insiders'] current clients," the Circuit Court's reasoning for denying the motion for temporary injunction was limited to both client-specific non-compete provisions in the BPA and the Circuit Court's record at that time (Doc. No. 12-1 at 15).

plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (citation omitted). Further, Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). To withstand dismissal, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s],'" *Nat'l Rifle Ass'n of Am. v. Vullo,* 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678-79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Huff v. Montgomery Cnty. Sheriff*, No. 3:24-cv-01503, 2025 WL 3517914, at *1 (M.D. Tenn. Dec. 8, 2025) (citing *Inner City Cont., LLC v. Charter Twp. of Northville, Mich.*, 87 F.4th 743, 749 (6th Cir. 2023)).

**III.     Analysis**

Hensen moves the Court to dismiss Apartment Insiders' complaint pursuant to Rule 12(b)(6) arguing that Apartment Insiders seeks to (i) relitigate issues already decided in the Circuit Court Case and (ii) transform "ordinary business disputes" into a trade secret misappropriation

claim (Doc. No. 12 at p. 1-2).[7] In response, Apartment Insiders asserts that Hensen (i) misunderstands the preclusive effect and reasoning of the prior determination of the Circuit Court, (ii) mischaracterizes the disputed trade secrets, and (iii) prematurely raises affirmative defenses, and, in the alternative, requests leave to amend its complaint (Doc. No. 20). In reply, Hensen asserts that Apartment Insiders' "speculative allegations [seek] to justify what has become a fishing expedition" (Doc. No. 21 at p. 1 and 4).

### A. Breach of Contract

Hensen contends that Apartment Insiders fails to state a claim under the breach of contract theory due to: (i) forum shopping and (ii) affirmative defenses (Doc. No. 12). More specifically, Hensen claims that refiling the instant matter was "forum shopping and an abuse of judicial process" because the Circuit Court already denied Apartment Insiders' motion for injunctive relief (Doc. No. 12 at p. 2). Hensen also claims that such a misuse of court resources is part and parcel of a larger pattern of inequitable behavior and unclean hands, which she believes should bar Apartment Insiders from seeking "damages for alleged harm of its own making" (*Id*. at p. 4).[8] However, these arguments fail for the following four reasons.

#### 1. Forum Shopping

While not explicitly stated, it appears that Hensen's forum shopping argument rests primarily on the preclusive effect of the prior Circuit Court decision (Doc. No. 12 at p. 2). It also appears that Hensen confuses res judicata, or claim preclusion, with collateral estoppel, or issue preclusion. *See Moran v. Svete*, 366 Fed. Appx. 624, 628 (6th Cir. 2010).

---

[7]  Hensen appears to also argue that Apartment Insiders (i) breached the BPA first by implementing a new commission policy and withholding her commissions and (ii) retaliated against her by communicating to her employer, which the Court will consider only in the context of her unclean hands argument to the instant Motion to Dismiss (Doc. No. 12 at p. 3).

[8]  Also, in support of her bad faith argument, Hensen points to her claims that Apartment Insiders retaliated against her by communicating with CAL (Doc. No. 12 at p. 4).

With respect to claim preclusion, Apartment Insiders voluntarily dismissed the Circuit Court Case without prejudice (Doc. Nos. 12-1 at p. 6 and 15 at p. 9). As a result, no final judgment on the merits was ever reached in the Circuit Court case and claim preclusion is not applicable (*Id.*). *See, e.g., Isbell v. Hatchett*, No. W2014-00633-COA-R3-CV, 2015 WL 756883, at \*6 (Tenn. Ct. App. Feb. 23, 2015) (reasoning that for res judicata to apply, the judgment in the prior case must have been final); see also *Quality Assoc., Inc. v. Procter & Gamble Distrib., LLC*, 949 F.3d 283, 289 (6th Cir. 2020) (noting that an interlocutory decision that did not dispose of the entire case can be reconsidered at any point until final judgment).

To the extent Hensen intends issue preclusion with her allegation that Apartment Insiders seeks identical relief between the filing of the instant matter and its motion for temporary restraining order (Doc. No. 21 at p. 2), the Court is unpersuaded. To establish issue preclusion, Hensen must show:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
> (2) determination of the issue must have been necessary to the outcome of the prior proceeding;
> (3) the prior proceeding must have resulted in a final judgment on the merits; and
> (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Pfeil v. State Street Bank and Trust Co.*, 671 F.3d 585, 601 (6th Cir. 2012) (citations omitted).

This test is not met. The Circuit Court's three-page order denying Apartment Insiders' motion for temporary injunction was not a "final judgment on the merits". *See, e.g., CSX Transp., Inc. v. Denardo*, No. 12–CV–11060, 2013 WL 1213067, n. 2 (E.D. Mich. Mar. 25, 2013) (concluding that issue preclusion could not be appropriately applied to an interlocutory order). Further, interlocutory decisions on injunctive relief cannot be the basis for issue preclusion on a motion to dismiss because they do not involve precisely the same issue. *Id.* While it is true that the

Circuit Court reviewed the enforceability of non-compete provisions within the BPA (Doc. No. 12-1 at 15), which is relevant to breach of contract allegations here, the parameters of what is appropriate for injunctive relief are not equivalent to what is plausibly alleged within the four corners of a complaint. *See Armengau v. Cline*, 7 Fed. Appx. 336, 344 (6th Cir. 2001). Moreover, Hensen appears to misunderstand the breadth of the Circuit Court's determination with respect to "client restrictions in [Apartment Insiders'] non-compete" as an extension to the entirety of the BPA itself (Doc. No. 21 at p. 3-4). Because the Circuit Court decision was limited to the context of injunctive relief, it cannot be deemed to be a decision on the plausibility of the allegations within the complaint here and, thus, does not qualify for issue preclusion purposes in the context of the Motion to Dismiss, let alone enforceability of the BPA as a whole.

Taken in a light most favorable to Apartment Insiders, the complaint states sufficient factual allegations, accepted as true, to provide notice that breach of contract is alleged and render such claim plausible at this early stage. *Courtright*, 839 F.3d at 518; *Fritz*, 592 F.3d at 722. That is, because Apartment Insiders pleads factual content that Hensen solicited and worked with Apartment Insiders' tenants and landlords in violation of the BPA (Doc. No. 1 at p. 5), the Court can draw the reasonable inference that Hensen could be liable for the breach of contract alleged. *Iqbal*, 556 U.S. at 678.

### 2. Affirmative Defenses

Hensen claims that Apartment Insiders breached the BPA first (Doc. No. 12 at p. 3). However, a complaint is not required to anticipate and negate affirmative defenses that a defendant might raise. *Scott v. Bank of Am.*, No. 12-12864, 2013 WL 5352959, at *8 (E.D. Mich. Sep. 24, 2013) (citing *Harris v. Pepsi Bottling Group, Inc., Location No. 42*, 438 F.Supp.2d 728, 733 (E.D. Ky. 2006)). Accordingly, the Court need not reach this issue.

Similarly, Hensen's unclean hands argument—with respect to Apartment Insiders' purported retaliation—is not appropriate at this time (Doc. No. 12 at p. 3). The Court will not lightly make inferences on behalf of Hensen without "clear, unequivocal and convincing" evidence that is not presently part of the record for consideration of a Motion to Dismiss. *Dobronski v. TBI, Inc.*, No. 20-11910, 2021 WL 1585203, at *4 (E.D. Mich. Mar. 11, 2021) (citing *Kearney & Trecker Corp. v. Cincinnati Milacron Inc.*, 562 F.2d 365, 371 (6th Cir. 1977) (internal quotations and citation omitted)). Hensen's allegations are also highly speculative and reliant on extrinsic evidence of Apartment Insiders' purported conduct,[9] which are not properly before the Court currently. *See Dobronski v. Advisorworld.com, Inc.*, No. 25-10168, 2026 WL 905121, at *10 (E.D. Mich. Mar. 31, 2026); *see also Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 912 F.3d 316, 344 (6th Cir. 2018). Finally, to the extent Hensen claims that the unclean hands doctrine should bar Apartment Insiders from seeking "damages for alleged harm of its own making," the Court disagrees (Doc. No. 12 at p. 4). Because unclean hands is an equitable concept that allows for injunctive or declaratory relief, it would not bar claims for monetary damages. *Dobronski*, 2026 WL 905121, at *10. Hensen's unclean hands defense is neither ripe for review, nor appropriate on the facts alleged.

### B.    Trade Secret Misappropriation

Next, Hensen claims that any disputed "'invoice documentation' and related business records" are "ordinary business records, not proprietary or confidential information" and, thus, cannot state a legally cognizable claim for trade secret misappropriation (Doc. No. 12 at p. 2). In

---

[9]    Generally, a court must rely on the facts contained in the four-corners of the complaint in resolving a motion to dismiss. However, the Sixth Circuit has recognized that "if extrinsic materials merely fill in the contours and details of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment." *See Armengau*, 7 Fed. Appx. at 344.

support, Hensen argues that Apartment Insiders' tenant and landlord data was (i) "stored on shared drives accessible to multiple agents" and (ii) "included only within invoice documentation [Hensen] created . . . [from] documents exchanged in the ordinary course of business and derived from public sources" after Apartment Insiders removed her access to the shared drive (Doc. No. 21 at p. 3).

It would appear that Hensen does not contest whether data was taken at all, but rather what type of data was taken (*Id.*). The complaint itself clearly alleges that Hensen accessed Apartment Insiders' password-protected storage site (Doc. No. 1 at p. 3-4). The complaint also makes clear that the data Hensen reportedly accessed is limited to non-public tenant and landlord data, including leads, compilations of names, contact information, leasing information, and referral fee information (*Id.*). Apartment Insiders makes no reference to invoice documentation in the complaint or otherwise (*Id.*).[10] While Hensen places great importance on invoice documentation she created from public sources for commission purposes (Doc. No. 21 at p. 3), that data is not relevant to the Motion to Dismiss and only stands to conflate the disputed data at issue. To be abundantly clear, the data at issue here is the non-public tenant and landlord data.

Hensen's contention that the shared drive was accessible to multiple agents within Apartment Insiders similarly misses the mark because the shared drive was limited to authorized personnel (*Id.*). Notably, Hensen seems to insinuate that the shared drive was insufficiently protected in one hand while emphasizing with the other that she could not have acquired trade secrets at all because she did not have access to the drive after her termination (*Id.*).

---

[10]    Apartment Insiders clarified that Hensen "pulled 'invoice documentation and related business records'" out of thin air (Doc. No. 20 at p. 4).

Taken in a light most favorable to Apartment Insiders, the complaint states sufficient factual allegations, accepted as true, to provide notice that trade secret misappropriation is alleged and render such claim plausible at this early stage. *Courtright*, 839 F.3d at 518; *Fritz*, 592 F.3d at 722. That is, because Apartment Insiders pleads factual content that Hensen retained, used, and disclosed Apartment Insiders' tenant and landlord data in violation of the federal Defend Trade Secrets Act (Doc. No. 1 at p. 5), the Court can draw the reasonable inference that Hensen could be liable for the trade secret misappropriation alleged. *Iqbal*, 556 U.S. at 678; *see also Allergan, Inc. v. Revance Therapeutics, Inc.*, 711 F.Supp.3d 873, 887, n. 18 (M.D. Tenn. Jan. 3, 2024) (citing *Bombardier, Inc. v. Mitsubishi Aircraft Corp.,* 383 F.Supp.3d 1169, 1184 (W.D. Wash. Apr. 15, 2019) (wherein misappropriation was plausible because (i) documents or information containing trade secrets were downloaded or sent and (ii) it was specifically alleged that trade secrets were thereafter disclosed)). Further, the Court need only consider whether Apartment Insiders alleged facts to render such a claim *plausible* at this stage of the analysis. *Id.* (emphasis added). Accordingly, any argument regarding whether misappropriation actually occurred is best left to the summary judgment stage (Doc. Nos. 12 at p. 2 and 21 at p. 3).

### C.   Motion to Amend

Alternatively, in the event this Court found any merit to Hensen's Motion to Dismiss, Apartment Insiders also requested leave to amend its complaint to cure any deficiencies (Doc. No. 20 at p. 5). Hensen argues that any such amendment would "reward procedural abuse and prolong inequitable hardship . . . already endured" (Doc. No. 21 at p. 5).

Apartment Insiders' request is odd to say the least. Under Rule 15(a)(1)(B), a party may amend its pleading "as a matter of course if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under

11

Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 14(a)(1)(B). Apartment Insiders could have directly responded to the Motion to Dismiss with an amended complaint, but it did not.

Moreover, a singular statement requesting leave to amend the underlying complaint in opposition to the Motion to Dismiss cannot be considered a proper motion because Apartment Insiders failed to state what or how it plans to amend the complaint (Doc. No. 20 at p. 5). Additionally, Apartment Insiders failed to attach a signed, proposed amended pleading in support of its request in contravention of the Local Rules. M.D. Tenn. L. R. 15.01(a). A bald request, without more, is at best, merely seeking permission to file a motion for this Court's later consideration, which is improper. *Bunn v. Navistar, Inc.*, No. 3:18-cv-00651, 2019 WL 1233849, at *2, n. 1 (M.D. Tenn. Mar. 15, 2019). Further, even if such a bare statement were construed as a proper request for leave to amend the complaint, it is still insufficient because there is no indication as to what grounds the amendment is sought. *Id*.

Hensen perceives Apartment Insiders' request for amendment as stemming from a larger pattern or practice of bad faith generally (Doc. No. 21 at p. 5). However, Hensen offers no factual support to support inference of bad faith (*Id*.). Nevertheless, without more, the Court cannot begin any determination of futility. *See*, *e.g.*, *Banerjee v. Univ. of Tenn.*, 820 Fed. Appx. 322, 328 (6th Cir. 2020) ("the court must consider, *inter alia*, '. . . futility of amendment.'" quoting *Brumbalough v. Camelot Care Ctrs.*, *Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005)). Because there is simply not enough before the Court for analysis into the merits, the request for leave to amend should be denied outright.

## IV.     Recommendation

For the foregoing reasons,

IT IS RECOMMENDED that the Motion to Dismiss (Doc. No. 12) be denied.

Any party has 14 days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within 14 days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within 14 days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 16th day of April, 2026.

LUKE A. EVANS
United States Magistrate Judge